SAVOY, Judge.
In this expropriation suit, the trial court awarded the defendant landowner $49,-124.25 as compensation for the servitudes taken and as severance damages. The defendant landowner appealed from the award as being inadequate, while by answer to the appeal, the plaintiff prayed that the award be reduced.
This is one of a series of suits wherein the State of Louisiana, through the Department of Highways, has expropriated property for the construction of the controlled access interstate expressway and' subsidiary service road. Recent decisions involving lands in the vicinity of the instant suit are State Through Department of Highways v. Yawn (La.App., 3 Cir.f *638 1961), 127 So.2d 545, State Through Department of Highways v. Boyer (La.App., 3 Cir., 1961), 130 So.2d 738, and State Through Department of Highways v. Williams (La.App., 3 Cir., 1961), 131 So.2d 600.
The real estate experts who testified in the instant case testified in the cases of State Through Department of Highways v. Yawn, supra, State Through Department of Highways v. Boyer, supra, and State Through Department of Highways v. Williams, supra, and many of the same comparable sales were used in those cases as were used in the instant case.
It might be noted that in the Yawn, Boyer and Williams cases, supra, the experts for the plaintiffs and the experts for the defendants varied greatly in fixing the value of the property taken and severance damages as a result of said taking.
For purpose of this decision, a plat is attached to this opinion and marked “Exhibit A” for identification herewith.

*639 The facts of the case are not in dispute and are correctly set forth by the trial judge as follows:
“In this proceeding plaintiff has taken a permanent servitude for highway purposes affecting three (3) parcels of land, designated on several plats which were filed in evidence as Tracts 95-A, 9S-B and 95-C, and a temporary servitude for use as a borrow pit affecting a fourth parcel. The size of each tract so affected is as follows:
Tract 95-A . 11.578 Acres
Tract 95-B 2.295 Acres
Tract 95-C .800 Acres
Borrow Pit . 6.794 Acres
“These tracts were portions of a 120-acre tract of land owned by defendant, located about midway between the Cities of Sulphur and Lake Charles, less than one-half mile south of U. S. Highway 90. The subject 120-acre tract is bounded on the west by State Highway 1134, a bituminous blacktop thoroughfare running north and south, having a frontage of about three-fourths of a mile on that highway. Another blacktop public highway, known as Parish Road, runs east and west through this 120-acre tract, severing it so that the south 40 acres is south of Parish Road and the remaining 80 acres is north of that road. The property is located immediately east of and adjacent to a developed residential subdivision known as Maplewood, being separated from the subdivision by Louisiana Highway No. 1134. At the time of the taking all of the subject property was dormant, level, wooded land with no improvements except those which have been or will be mentioned herein.
“The 120-acre tract from which these servitudes were taken is traversed by a railroad, a high-voltage electric line and by a number of pipe lines, ranging in size from two inches to 20 inches in diameter. Gulf States Utilities Company owns a 100-foot right-of-way for high-voltage electric lines running east and west along the southern edge of subject property. A railroad running in a northeasterly and southwesterly direction, and having a right-of-way of 100 feet, also crosses the south 40 acres of the subject property. A number of pipe lines have been constructed on and across said property .running parallel to the railroad right-of-way, some of said pipe lines being immediately north of the railroad and others being immediately south of it. Also, two additional pipe lines, known as the Texas Company lines, traverse this property in a northeasterly-southwesterly direction, entering it at about the southwest corner of the 120-acre tract and then running in a northeasterly direction across the railroad and Parish Road, and then crossing the east boundary of the subject property at a point several hundred feet north of Parish Road. Some of these pipe lines are buried and others are located above the surface of the ground. The railroad, the high-voltage electric lines and all of the pipe lines except a portion of the Texas Company lines are located south of Parish Road, or in the south 40 acres of defendant’s property. Rights-of-way for the high-voltage line, the railroad and for all of the above described pipe lines have been duly executed and filed in the records of Calcasieu Parish.
“All of the servitudes taken by plaintiff in this proceeding are located south of Parish Road, except the parcel designated as Tract 95-C, which is located north of that road.
“Tract 95-A, containing 11.578 acres, is an irregular shaped parcel of land, the principal portion of which consists of a strip of land 290 feet wide running parallel to and 60 feet north of the railroad right-of-way. All of the pipe lines which run parallel to and north of the railroad are located on the 60-foot strip of land which lies between the railroad right-of-way and Tract 95-A. Also included in Tract 95-A is a narrow strip of land running along the west side of the south 40-acre tract of the subject property.
*640 “Tract 95-B, containing 2.295 acres, is a strip of land 80 feet wide running in a northeasterly and southwesterly direction parallel to and 50 feet south of the railroad right-of-way. All of the pipe lines which run parallel to and south of the railroad are located in the 50-foot strip which lies between the railroad right-of-way and Tract 95-B.
“The borrow pit area, containing 6.794 •acres, is an irregular shaped tract located in the northwest comer of the southernmost 40-acre tract heretofore owned by defendant, the borrow pit area being bounded on the north by Parish Road and •on the west and south by Tract 95-A. Plaintiff, of course, has taken only a temporary servitude affecting the borrow pit •area, which servitude is to remain in effect until construction of the highway at that point has been completed.
“Tract 95-C, containing .800 acres, is the •only parcel taken which lies north of Parish Road. It is a narrow, tapering parcel •of land running along the west side of a portion of defendant’s property, extending from Parish Road north a distance of 1,089.01 feet.
“Plaintiff alleges that the permanent servitudes which it has taken had a value ■of $11,720.00, that the damages sustained •by defendant as a result of that taking •amount to $625.00, that the value of the temporary servitude taken for a borrow pit is $6,800, and that the damages resulting from that taking amount to $650.00. Accordingly, plaintiff deposited in the registry of the.court at the time of the taking the sum of $19,795.00, representing the total amount alleged to be due by it for the servitudes taken and severance damages. Defendant contends that the value -of the permanent servitudes designated as Tracts 95-A, 95-B, and 95-C is $42,445.15, •and that the value of the temporary servitude for use as a borrow pit is $19,702.00. In addition thereto, defendant contends that as a result of the taking it has suffered severance damages in the amount of $113,596.60, and accordingly it demands judgment for the total sum of $175,743.75, less the amount heretofore deposited by plaintiff in the registry of the court.”
For the purpose of granting defendant compensation for the servitudes taken by plaintiff, and also at arriving at the severance damages to the property after the taking, the trial judge divided the land into two tracts for the reason that he found a public road separated the 120-acre tract, forty acres being south of the public road and eighty acres being north of the public road.
It is the contention of plaintiff that because of the pipe lines and railroad tracks traversing the property and the public road dividing the south 40 acres from the north 80 acres, the trial judge should have considered the property as containing six separate tracts in determining the amount of compensation defendant should have been awarded, and also in determining the severance damages suffered by defendant because of the expropriation of its property.
Counsel for defendant contends that the trial judge should have considered the property owned by the defendant as a single tract in determining the value of the property taken by plaintiff, and also in making an award for severance damages.
It is defendant’s position that it purchased the 120 acres for industrial uses and that it has always considered the land as one unit; also that it is not in the residential business. Its witnesses testified to this effect.
In the case of State Through Department of Highways v. Williams, supra, the court made the following observations on this subject, to-wit:
“In arguing that the defendants’ holding cannot be regarded under the circumstances as a single holding for the purposes of awarding damages, *641 the Department relies upon the principle that ‘when the whole or a part of a particular tract of land is taken for the public use, the owner of such land is not entitled to compensation for injury to other separate and independent parcels belonging to him which results from the taking.’ 4 Nichols, The Law of Eminent Domain (3rd ed., 1951) Section 14.3, p. 426. See Louisiana Ry. & Nay. Co. v. Xavier Realty Co., 115 La. 328, 39 So. 1.
“As stated by the cited treatise authority, ordinarily whether a landowner’s holding constitutes a single tract or not for purposes of determining severance damages is a practical question to be decided by the trier of fact, which trier ‘should consider evidence on the use and appearance of the land, its legal divisions and the intent of the owner and conclude whether on the whole the lots are separate or not. In such cases the land itself rather than the map should be looked at, and one part of the parcel is not to be considered separate and independent merely because it was bought at a separate time from the rest and is separated from it by an imaginary line.’ Id., Section 14.31, pp. 431-432. See State through Department of Highways v. Yawn, La.App. 3 Cir., 127 So.2d 545. As the treatise continues, ‘a public highway actually wrought and travelled, a railroad, a canal, or a creek running through a large tract devoted to one purpose does not necessarily divide it into independent parcels, provided the owner has the legal right to cross the intervening strip of land or water.’ Id., 14.31(1), pp. 433-435.” [131 So. 2d 603.]
The trial judge concluded that the land of defendant was divided because of the public road which separated the southern 40-acre tract from the northern 80-acre tract. We agree with the conclusion reached by the trial judge.
After an examination of the evidence in this case, this Court is of the opinion that the south 40-acre tract owned by defendant in the instant case was, prior to the taking, best suited for industrial purposes and that after the taking the parcels left in this tract had little or no value for industrial purposes. However, Tract 4-R could best be used for low income residential development. Tracts 5-R and 6-R were best suited, before expropriation, for light industrial or residential purposes, and after the taking of 95-C the property would still be useful for these purposes.
This Court will discuss (1) the amount of compensation which defendant will be allowed because of the expropriation of its land, and (2) the amount of severance damages suffered by it because of the taking.
Compensation Allowed to Defendant for Taking of Servitudes on the Land
The servitudes taken by plaintiff, designated as Tracts 95-A, 95-B, and 95-C, comprise the following acreage:

The experts for defendant valued the land before taking at prices varying from $2,400 to $3,000 per acre, whereas, the experts for plaintiff placed a value of $1,000 per acre thereon before said taking. The district judge found that Tracts 95-A and 95-B had a value of $2,117 per acre before the taking. He found that 95-C had a value of $1,750 before the .taking. However, when the district judge made the award, he gave Tract 95-C a value of $2,117 per acre. In the recent case of State Through Department of Highways v. Williams, supra, (writs refused by the Louisiana Supreme Court) *642 the sum of $2,117 per acre was allowed for property directly east of the south 40-acre tract of land in the instant case. We find no manifest error in the award made by the lower court.
Plaintiff also expropriated a borrow pit designated as 7-R on Exhibit “A”. This tract contains 6.794 acres and is in the south 40-acre tract belonging to defendant. This property is to be used for temporary purposes and will revert to the owner after plaintiff discontinues its use. Some of the real estate experts testified that this tract would have a value of $679.40 after the expiration of the servitude. The trial judge adopted this view. We are of the opinion that his ruling is correct. The value of 7-R is $13,703.50. This sum is arrived at by multiplying 6.794 acres times $2,117, which totals the sum of $14,382.90, and deducting from that sum $679.40.
Severance Damages after Taking
As to Tract 1-R, the district judge did not allow any severance damages because he felt that any damages sustained by defendant as to this tract being separated from the railroad would be offset by the fact that the tract would have considerably more frontage on the new concrete service road after the taking. The experts’ testimony for plaintiff was in line with the ruling of the trial court. The experts for defendant found the value of the remainder of 1-R would be $5,197.80, after the taking. In the case of State Through Department of Highways v. Williams, supra, this Court found that the property similarly located to the east of 1-R had been diminished 50 per cent because of the taking. The Court found the land was no longer useful or valuable as an integral part of the single tract because it was now separated from the main part of the property by the highway and/or service road. Tim. property in the Williams case, supra, adjoined 1-R to the east. The trial judge found this property before the taking had a value of $2,117 per acre. With this valuation we agree. The severance damage to this tract is fixed at $3,937.62. Tract 1-R contains 3.72 acres. This amount multiplied by $2,117 per acre totals the sum of $7,875.24. Fifty per cent of this sum of $3,937.62, which is the severance damage for this tract.
The trial judge did not allow any severance damage to Tract 2-R, assigning the same reasons for his refusal to allow severance damage to Tract 1-R. In view of the holding in the case of State Through Department of Highways v. Williams, supra, severance damage is allowed for Tract 2-R for the same reasons herein assigned for granting severance damage for Tract 1-R. This tract contains one and one-half acres having a value of $2,117 per acre, or a value of $3,175.50 before the taking. After the taking this tract is worth 50 per cent of its original value, or the sum of $1,587.75.
The trial judge found that Tract 3-R had sustained severance damage in the sum of $656.00. Mr. Abelman found the value of this tract to be $332.80 after the taking. This tract will be practically worthless after the taking. It is cut off from access to the northern part of the highway by the expressway and from the southern part of the property by the proposed service road. This tract contáins 1.9 acres. It had a value before the taking of $2,117 per acre, or the sum of $4,-022.30. The severance damage to this tract is fixed at $3,689.50.
Tract 4 — R contains approximately six acres. The trial court placed the severance damage on this tract at $3,702. This tract had a value in round figures of $12,702, being six acres at $2,117 per acre. This tract will not be as adversely affected because of the taking as it will still have frontage or access to Parish Road. The value of this property has depreciated by approximately i/jrd because of the talc- *643 ing. Severance damage is accordingly-fixed at the sum of $4,234.
We agree with the trial judge that Tracts S-R and 6-R, which are located north of Parish Road, have not suffered any severance damage because of the taking of yiths of an acre on the west side of Tract S-R. The tracts will have the benefit of two highways, one to the west of the property, and the other to the south. There is testimony in the record that 80 acres is sufficient for an industrial plant. Firestone, which has a major plant in the vicinity of S-R and 6-R, has a plant which was built on approximately 82 acres of land.
After the case was decided by the district judge, plaintiff deposited in the registry of the court in addition to the sum of $19,795.00 deposited at the time the suit was filed, the sum of $32,995.41, making a total of $52,790.41, $49,124.25 of this amount being the sum which the district judge awarded defendant as compensation for servitudes taken and as severance damages, and the remaining sum of $3,666.16 being for interest from the time of the filing of this suit until date of deposit. Defendant on July 5, 1960, by order of court withdrew the sum of $52,790.41 without prejudice to its right of appeal. It perfected its appeal on May 5, 1961.
For the reasons assigned, the judgment of the district court is amended by increasing the award as compensation for the servitudes taken and as severance damages from the sum of $49,124.25 to the sum of $58,215.12. Plaintiff has deposited the sum of $49,124.25 in the registry of the court, plus interest from the time of the filing of the suit until date of deposit, June 29, 1960, therefore, defendant is entitled to an additional sum of $9,090.87, being the difference between the sum deposited and the total amount to which defendant is entitled.
Judgment is therefore rendered in favor of defendant, Cities Service Refining Corporation, and against plaintiff, State of Louisiana, through the Department of Highways, for the sum of $9,090.87, with five per cent per annum interest thereon from December 30, 1957, until paid, the amount so awarded being in addition to the sum of $52,790.41 deposited by plaintiff in the registry of the court. Plaintiff is to pay all cost of this appeal.
Amended and affirmed.