BREAUX, C. J.
This is the second appeal in the case. On the first the judgment was annulled, and the case remanded to be tried in accordance with the views expressed by the court in its opinion. The court held that the defendant had not sufficiently itemized the damages, and that he should amend his answer and allege specifically the amount of each item, and specify the damage for each in order that he might introduce his evidence.
In the first suit (same title) defendant claimed the sum of $3,000, value of the land, and $3,000 damages, without stating the amount of each item of damages claimed. The pleader included all the items in one sum.
This was held error, and the court decided that the defendant should have specified the respective amounts making up the total sued for.
The other error, as found in the decision cited later, was that the trial judge excluded testimony of several witnesses on the ground that they were not experts, nor sufficiently well informed in regard to the value of land in the locality in which defendant’s land is situated to entitle the defendant to their testimony.
On the first trial the jury rendered a verdict for $500, value of the land, and was entirely silent in regard to the claims of defendant for damages. La. Railway & Navigation Co. v. Sarpy, 117 La. 150, 41 South. 477.
The defendant complied with the decree of the court in the first suit, and amended the answer by specifying items and amounts claimed for each item. In addition, he alleged a cause of action that did not exist at the date that the suit was filed; that is, the last was not within the terms of the decision cited supra — that is, in the amendment, in addition to the issues alleged in first suit, he claimed damages to crops, a new claim, and for excavations made by the company, the whole amounting to $6,492, making a total of $12,492, a considerable sum over the amount which he claimed in the first suit. The amount over the sum alleged in the first petition includes ne-w items of a date subsequent entirely and different items from those first alleged.
On the second trial the jury allowed $626.-25 for 51/10 acres, at the price of $125 an acre, and $25 damages, and interest allowed, $116.76, making total of $767.96.
On the second trial the plaintiff objected to evidence offered by defendant to prove *391 other damages than those alleged in the first answer, and sought to limit the defendant to evidence, admissible under the amendment, as it was contended, itemized, and objected to new items of damages not before claimed, and not strictly growing out of adjudication.
The court sustained the objection, holding that the claims for damages subsequent to those originally claimed could not be cumulated with the demand for the expropriation of the property.
This is the first question for our decision.
1. Under the organic law, expropriation should be limited to ascertaining the value of the property and the damages growing out of the expropriation, as made to appear upon allegations at the date that the expropriation is sought. It was not contemplated that damages separate from the issues of expropriation of a date subsequent to the institution of the suit are to be considered in that action. It may be a good cause for a separate suit. Primarily the value of the property at the date of the suit is to be ascertained (and incidental damages). This was, in substance, the opinion expressed by the court in La. Navigation Company v. Xavier Realty Company, 115 La. 338, 39 South. 1.
If the road causes damage in any way for which it is liable after it begins to run, it gives rise to a good cause of action, but it does not give rise to a good cause of action which can be cumulated, as of the date of the suit for expropriation.
The value of the property and the damages to be allowed are to be assessed as of the date of the filing of the petition. Concordia Cemetery Association v. M. & N. W. R. R. Co., 121 Ill. 199, 12 N. E. 536.
And to the same effect is Helmer v. Colorado Southern, N. O. & P. R. Co., 122 La. 142, 47 South. 443; Opelousas, G. & N. E. Ry. Co. v. St. Landry Cotton Co., 121 La. 796, 46 South. 810; Missouri Pacific Ry. Co. v. Wernwag, 35 Mo. App. 449.
Direction was given and the suit was remanded to enable the defendant to plead all causes of action of the date the suit was brought. By its general terms it confined the issues to that date.
Learned counsel for défendant, complaining of the ruling of the district court on this point, illustrate their position by saying that, if the car of the plaintiff had destroyed a horse of the defendant or negligently burned a barn, the defendant would have been compelled to institute another suit, but that under the supplemental answer they claim only for the roadway'and consequent damages.
The defendant really claimed more than consequent damages from the expropriation. He claims damages arising after the suit for expropriation was instituted, and does not confine himself to those arising immediately from the expropriation.
In order to fix the rights of parties, we will go back for a moment to original principles. Trespass in its largest and most extensive sense includes the disturbance of lawful possession or ownership. 'Interference is trespass. It includes an important and comprehensive group of causes of action, and also includes the right of action, if any the defendant has, for the damages subsequent to the expropriation. The plaintiff should commit no act to damage the defendant. If it does, it becomes liable for trespass, whether this damage is for the killing of a horse, causing the destruction of a barn by fire, closing a drain, or destroying a crop. They are distinct from the expropriation, which is authorized by law.
2. The next of defendant’s grounds is that jurors not entirely competent were forced upon him as members of the jury.
These jurors were closely examined on their voir dire. They were competent free *393 holders. One or two in their answers conveyed the idea that they were not competent to determine the value of land. That is not an unusual disclaimer, for many persons do not consider themselves competent to determine the value of land. If one possesses average common sense, he is a good juror. Ignorance of land value and his inability in that direction are not ground for excluding him. He may discharge the duties of a juror by hearing the testimony, observing closely, and deciding according to the best light be-fore him.
3. We are brought to the question of the value of the land. The evidence shows that it was worth more than the amount allowed by the verdict. The plantation is a sugar plantation. As such, none of the witnesses estimated it as worth over the amount found by the jury, but less than that amount. As a place on which to build factories, the estimates were very high. Five hundred dollars an acre was the average.
That is not a reasonable estimate. The evidence does not show that the land in that neighborhood is sought after for factory sites. It may be in the course of time. That is remote, and cannot be considered in forming an estimate of the value of the land at this time. The place is a large farm, and is valued as such.
The verdict as relates to value is correct. Even if it is a little over its value,- the damages to which we will refer in a moment are less in our opinion than should have been allowed. The place was divided by the expropriation, and in consequence the strip of land was worth more than the value of the land, taking the place as a whole.
5. This brings us to the damages proved in the ease, as connected with' the expropriation. We do not propose to consider any other.
The first item of these damages is for bridges. Some of these bridges had fallen into ruin. Defendant had ceased to use them. Whether the strips of land to which they led were abandoned on account of the railroad track or not is not shown.
Another item relates to the revetment levee. The intention of the owner is to construct another revetment levee, and, in case he does, the pumping stations also on the place will have to be changed. For both, the revetment levee and the pumping stations, an amount is claimed.
The intention to remove the revetment levee is hardly an element of damages. If the old levee is rendered useless by the embankment of the railroad company on which its road runs, it should pay the value of the old levee. But, as to the new, the light before us would not in our opinion justify us in compelling the plaintiff to pay for it. The old revetment levee may be useful .where it is. In any event, in order to allow damages claimed, it was necessary to prove that the railroad company has ruined the old revetment levee, and that another in another place is necessary.
To say the least, the evidence leaves the question in a state of considerable doubt.
An item is claimed for destruction of cane during the preliminary survey. There was cane destroyed, for which the plaintiff should pay.
About trespass of plaintiff’s employes, an item of damages claimed, we gave it no attention, as we found no evidence showing trespass of employes for which damages can be allowed.
The item for cutting the place in small parcels and obstructing intercommunication has given us some concern. Some of the witnesses fixed the damage at a large amount. Others do not.
There is no question but that the plantation of defendant was divided into two parts, separating them by an embankment. The drainage is fairly good, although it has giv *395 en rise to complaint. " On that score we have found no ground to allow damages.
The amount of $25 allowed for damages is too small. Considering the case as a whole, the defendant was entitled to something more. While we do not agree with the extravagant estimates of some of the witnesses, we are decidedly of the opinion that the amount should be at least $1,000 all together, with interest thereon at the rate of 5 per cent, per annum on $700 of the amount, and a similar rate of interest on the remainder of the amount.
We found no small difficulty in arriving at a conclusion about the value of the land and particularly in assessing damages. The evidence at times is desultory, unsatisfactory. We are quite certain that the amount allowed is not excessive, and we will add that we are unable to assess it at less. A planter, who is as much inconvenienced as this defendant, whose whole system of drainage is interfered with, whose place is divided into parcels, certainly should recover at least the amount allowed.
We do not overlook the verdict of the jury. On the contrary, we give it due weight. If it were not for the verdict, the amount allowed by us would be larger. But we are unable to abandon our own appreciation of the amount that should be allowed for the damages. As above stated, that amount allowed by the jury is too small. We are not particularly concerned in deciding about the costs of another revetment levee from defendant’s point of view that another such levee is necessary.
We are not inclined to the view that that necessity is owing to the railroad embankment. There are tressels and other openings in this embankment for the water to flow through. If insufficient, the questions arising aré not before us for consideration.
As relates to the drainage, there are ditches and canals along the embankment forming a part of the drainage system of the plantation. Part of this drainage met with defendant’s approval.
At the first trial in this case in open court, a discussion arose on the subject between defendant and the engineer of plaintiff. The latter expressed the desire to comply with defendant’s wishes in the matter, and promised that certain drainage work would be done.
We infer that it received attention and was done. We found no denial upon the subject in the record.
There are other items of damages, and for that reason we have concluded to increase the amount heretofore allowed. There is precedent for such an increase over the Verdict of the jury in expropriation case.
The- amount is increased to $1,000.
For reasons assigned, the judgment appealed from is amended by increasing the amount allowed to $1,000, and, as amended, is affirmed, appellees to pay costs of appeal.